## THE PENOBSCOTT.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

### No. 384.

SALVAGE—RESCUE OF GROUNDED SCHOONER—AMOUNT OF AWARD.

A schooner worth, with her cargo, $8,000, grounded on the shoals inside the mouth of Cape Fear river. She was in imminent danger of being lost, with her cargo, by the action of the wind and breakers. She had

hoisted a distress signal, and was about to be abandoned by her crew, when she was rescued, and towed safely into port, by libelant's passenger steamer, which was worth about $16,000, and manned by a crew of seven, and which left her wharf, and went to the assistance of the schooner, there being no other vessel near enough to give assistance. The salvage service occupied an hour, and was promptly and efficiently rendered. The steamer passed through the breakers, but was at no time in great peril, nor were the lives of those on board either vessel in great danger. *Held,* that an award of $2,000 was excessive, and should be reduced to $1,000.[1]

Appeal from the District Court of the United States for the Eastern District of North Carolina, at Wilmington, in Admiralty.

Thomas Evans, for appellants.

George Rountree, for appellees.

Before GOFF and SIMONTON, Circuit Judges.

GOFF, Circuit Judge. This is an appeal from a decree rendered by the district court of the United States for the Eastern district of North Carolina for salvage services in favor of John W. Harper, owner and master of the steamboat Wilmington, against the schooner Penobscott. 103 Fed. 205. On the morning of February 3, 1900, the Penobscott, laden with sawed pine lumber, bound from Jacksonville, Fla., to the port of New York, seeking the port of Wilmington, N. C., for repairs, ran aground on the sand shoals after crossing the Cape Fear bar. She was head on the shoals, pounding heavily, leaking some, was among the breakers, the tide rising, moderate breeze blowing, and the current was driving her further on the shoals. Her distress signal was flying from the rigging, her life boat was lowered, and the baggage of her crew was partly on deck and in the small boat. The steamboat Wilmington was at the wharf at Ft. Caswell, between two and three miles from the schooner, when the latter went aground. Observing the condition of the schooner, the Wilmington went to her assistance. The latter was a passenger steamer of 200 horse power, with 7 feet draft, and a crew of 7, and was at that time, on a fair estimate, worth about $16,000. It was near 8 o'clock a. m. when the steamboat reached the schooner, and within an hour thereafter the latter had been pulled off the shoals, and was being towed into port. The Wilmington, in going to and returning with the schooner, passed through the breakers, the waves going over her sides and into the engine room. About the time the Wilmington reached the schooner, a portion of the life-saving crew stationed near by, using two surf boats, came to and boarded the schooner, rendering such assistance as they could. The wind and the tide were in the same general direction. No other vessel was in sight, except a United States steamer, a sand sucker then working on the bar, but not in speaking distance. This steamer drew 14 feet, and could not reach the schooner, whose bow was in about 9 feet of water. There was no contract, and the parties failed to agree as to the compensation the Wilmington was entitled to on account of the services rendered by her. The schooner, her tackle and cargo, were worth at least $8,000. The case came on regularly

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280..

to be heard, the depositions of some witnesses were read and others were examined in open court, when a decree was passed in favor of the libelant for $2,000 as salvage compensation, to be paid by the Penobscott and her cargo, as also the costs. From said decree the appeal we are now considering was sued out. Subsequent to the allowance of the appeal, the appellant obtained leave under the rules, and took additional testimony, which has been considered by this court.

The appellant insists that the allowance for salvage made by the district court is excessive, and we are now to determine if the same can be justified by the rules applicable to cases of the character now under consideration. We are of opinion that the services rendered by the Wilmington were meritorious, and that a fair and just compensation should be allowed for the same. The Wilmington promptly responded to the signal of distress, and willingly rendered the necessary assistance to the disabled schooner, and her conduct, under the circumstances, was most commendable. The steamboat was quickly moved to the sand shoals near the mouth of the Cape Fear river, where the schooner was aground, and during the time she was engaged in the salving work she was properly and skillfully handled. But we do not find that there was any great risk to the property used by the salvors, nor to the lives of those engaged in the work. The schooner was, doubtless, in great danger at the time the Wilmington reached her, and the cargo would probably have been lost, or greatly damaged, but for the timely assistance rendered by the latter. We do not deem it necessary to discuss the many cases cited by counsel relating to the question of salvage, for the law applicable thereto has been so repeatedly announced and illustrated by the supreme court, as well as by this court, that it will not now be profitable to either quote it or to apply the cases mentioned in the disposition of this appeal. There is some conflict in the testimony, but it is quite evident that, while there was danger to the schooner and her cargo, there was no real peril, either to the property of the salvors or to the lives of any of those employed upon either vessel. It should be kept in mind that the schooner was not exposed to the dangers of those portions of the North Carolina coast so dreaded by the most experienced seamen, to which counsel alluded in argument, but that she was in fact on the shoals within and near the mouth of the Cape Fear river. At the time the Wilmington went to the aid of the Penobscott the wind was not over 16 miles an hour, and at no time after the grounding of the schooner and before she was pulled from the shoals by the Wilmington was there a heavy and dangerous sea. Still the work was courageous and commendable, and is entitled to and will have the favorable consideration of the court in finding the proper award for salvage. When we look at the danger to life and property, to which we have already referred, and when we recall that the value of the property saved did not exceed $8,000, and that the time the Wilmington was engaged in the work of rescue was about an hour, we are impelled to the conclusion that an allowance of $1,000 for salvage is, under all the circumstances of this case, just to the salvors and fair to the schooner so rescued. The decree appealed from will, therefore, be modified as in-

dicated, and this case is remanded to the district court of the United States for the Eastern district of North Carolina, with instructions to proceed further therein in accordance with this opinion.